JUDGE CASTEL

MATTHEW M. D'AMORE
MDAmore@mofo.com
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: 212.468.8000
Fax: 212.468.7900

Attorneys for Plaintiff
IRAQI REFUGEE ASSISTANCE PROJECT

# 12 CIV 3461



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ :

IRAQI REFUGEE ASSISTANCE PROJECT,               :        Index No.

Plaintiff,               :

-against-               :        **COMPLAINT**

UNITED STATES DEPARTMENT OF               :
HOMELAND SECURITY,               :

Defendant.               :

------------------------------------------------------ x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff Iraqi Refugee Assistance Project ("IRAP") brings this action for

injunctive and declaratory relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552(a) *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      IRAP seeks to compel the release of records relating to the United States Refugee

Admissions Program ("USRAP") and related proceedings.  More than nine months after

requesting records from the Department of Homeland Security ("DHS") under FOIA, DHS still

has not disclosed many of the requested records and has wrongly withheld relevant information

under the pretext of FOIA's exemptions.

1

3.    To advance its work and effectively support individual Iraqi refugees' applications for entry to the United States, IRAP needs access to the requested USRAP data. Since September 2008, IRAP has worked with over 1,000 individuals on their refugee cases. The requested information will assist and educate current and future refugee applicants who require IRAP's assistance precisely because they do not understand how USRAP and related proceedings function.

4.    The requested information will also provide insight into the fairness, organization, and quality control of DHS's vast refugee program. Worldwide, there are over 10.5 million refugees and people living in refugee-like circumstances, according to estimates from the United States High Commissioner on Refugees ("UNHCR"). An additional estimated 30 million internally displaced persons are forced to live in refugee-like circumstances in their own countries. The United States resettles, on average, approximately 60,000 refugees per year and considers refugee applications from many thousands more. In determining whom to resettle, DHS officers travel around the world to interview refugees to decide whether applicants are refugees as defined under United States law and should be admitted to the country.

5.    Despite pleas from refugee rights advocates, the United States bans counsel from attending these crucial DHS interviews.

6.    The requested information does not exist in the public sphere. Disclosure would allow the public to gain a fresh perspective on the workings of a government agency that determines who will and will not be admitted as a refugee to the United States, but operates away from public view and accountability.

7.    IRAP made valid FOIA requests to obtain the documents sought, in compliance with all statutory requirements, but DHS has failed to comply with its obligations under FOIA. Accordingly, IRAP brings this action to enforce the statute and compel the release of these critically important, validly requested materials.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i), and 28 U.S.C. § 1331 and 1361.

9.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a)(1), as the Plaintiff resides in the Southern District of New York.

## PARTIES

10.     Plaintiff IRAP is part of the Urban Justice Center, a registered non-profit organization in New York, and organizes law students and *pro bono* law firm attorneys to facilitate the individual representation of refugees, visa applicants and applicants for humanitarian parole, to advocate for administrative changes to systems of refugee and Special Immigrant Visa processing in the United States, and to assist Iraqi refugee families in the United States. IRAP's focus is on the most urgent refugee cases. These typically include cases of medical emergency, domestic abuse, and human trafficking. IRAP also assists members of religious and other minority groups who face persecution in their host countries. IRAP identifies refugees in need of assistance by way of referrals from UNHCR and various NGOs, including Save the Children, the Heartland Alliance, and the American Civil Liberties Union. IRAP currently has chapters at 21 law schools including the following: New York University School of Law, Columbia Law School, Yale Law School, Harvard Law School, University of Pennsylvania Law School, University of California at Berkeley School of Law, Stanford Law School, and the University of Southern California School of Law. Each IRAP chapter is supported by its host law school. In addition, IRAP facilitates the provision of on-the-ground legal services to refugees in Amman, Jordan, in cooperation with a clinical legal education program at the University of Jordan Law School.

11.     Defendant DHS is an agency established in the Executive Branch of the United States Government with responsibility for securing the nation's borders, in part by enforcing federal immigration laws and overseeing the refugee process  DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS includes a component called the United States

3

Citizenship and Immigration Service ("CIS"), which has responsibility for managing the immigration process, including the adjudication of refugee applications.

## STATEMENT OF FACTS

### CIS Manages and Implements the United States Overseas Refugee Adjudication System

12.    The U.S. Citizenship and Immigration Service is responsible, in partnership with the U.S. Department of State, for administering and implementing USRAP.  Although technically jurisdiction over USRAP is said to lie with the State Department, many portions of the proceedings, including the final decision as to whether or not an applicant is granted refugee status, are administered directly and solely by CIS.

13.    CIS operates 28 field offices around the world and sends teams of "Circuit Riders" to areas with highly concentrated refugee populations to adjudicate individual applications for refugee resettlement in the United States.

14.    Individuals whose applications were denied by CIS can request review.  These "appeals" are also adjudicated by CIS.  Such appeals are referred to as Requests for Review or Requests for Reconsideration ("RFR").

15.    Data regarding refugee applications, decisions, and appeals of overseas adjudications are maintained by CIS on several computerized databases.

16.    CIS also shares data with the U.S. Department of State, including data contained in the Worldwide Refugee Admissions Processing System database ("WRAPS").

17.    In addition to its adjudicatory and data gathering duties, CIS also conducts quality assurance program reviews of refugee adjudications.

**IRAP Submitted a FOIA Request to CIS Regarding Its Overseas Adjudications of Refugee Applications and Appeals**

18.     By letter dated July 15, 2011, IRAP submitted a FOIA request to CIS for various records relating to its overseas refugee adjudication program. (Exhibit ("Ex.") 1.)  On information and belief, this information is not publicly available.

19.     IRAP also requested a fee waiver.  (*Id.*)

20.     The records requested directly relate to IRAP's mission to alleviate the humanitarian crisis of refugees in Iraq and the broader refugee challenges facing the United States.

21.     The provision of these records would directly impact the ability of IRAP to assist and advocate for Iraqi refuges, helping to clarify the cumbersome and opaque refugee admissions process.

22.     On July 25, 2011, DHS issued a letter acknowledging receipt of IRAP's request and assigning it the identification number COW2011000600. (Ex. 2.)  The letter also stated that CIS was denying IRAP's request for a fee waiver. (Ex. 3.)

**IRAP Met and Conferred with CIS and Agreed to Limit the Scope of Its FOIA Request**

23.     On August 12, 2011, IRAP conferred with DHS employees Joanna Ruppel, Stacy Strong, Richard French, Roger Andoh, and Eliot Viker regarding its FOIA request.  DHS expressed a concern about the volume of documents potentially requested.  In response, IRAP proposed to significantly limit the request's scope by substantially reducing the number of categories of documents requested. (Ex. 4.)

24.     In addition to limiting the scope of its request at that time, IRAP expressed its

willingness to consider further limitations following its review of sample documents DHS agreed

to disclose during the August 12, 2011 conference.

25.     By letter dated September 29, 2011, CIS granted IRAP's fee waiver appeal.

(Ex. 5.)

26.     In a separate letter, also dated September 29, 2011, IRAP, pursuant to FOIA,

requested documents and information pertaining to refugee adjudications believed to be

contained in the WRAPS file.  (Ex. 6.)  Although the State Department controlled the database,

several DHS employees stated during the August 12, 2011 conference that CIS had custody and

control of much of the data within the WRAPS database.

27.     Because the two requests addressed the same and related information, CIS

consolidated the September 29, 2011 request with the July 15, 2011 request under the same

FOIA case control number.

### CIS Wrongly Withheld Portions of the First Set of Sample Documents

28.     By letter received on October 20, 2011, IRAP obtained the first set of sample

documents disclosed by CIS.  (Ex. 7.)

29.     Except for the cover page, CIS wrongfully redacted the entirety of the "USCIS

International Operations Year End Report (FY 2010)" ("the Report") pursuant to FOIA

exemption 5 U.S.C. § 552(b)(5) ("Exemption 5").  Exemption 5 exempts from disclosure matters

that are "inter-agency or intra-agency memorandums or letters which would not be available by

law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

Exemption 5 generally encompasses "traditional common-law privileges against disclosure

including the work-product doctrine, and executive, deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).

30.   In withholding the Report, CIS provided no explanation other than stating that one or several privileges under Exemption 5 "may" apply.  (Ex. 8 at 1, n.2.)  Without knowing CIS's reasoning, IRAP cannot know whether the exemption is justified or whether the Report's disclosure was even given adequate consideration.  Such vague and conclusory assertions are contrary to FOIA's purpose to promote open government and conflict with the Court's narrow construction of FOIA's exemptions in support of this policy.  *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (FOIA's mandate calls for broad disclosure of government records and thus its exemptions "are to be narrowly interpreted."); *see* Memorandum for United States Attorney General Eric Holder to Heads of Executive Departments and Agencies (March 19, 2009) ("Holder Memo") ("An agency should not withhold records merely because it can demonstrate, as a technical matter, that the records fall within the scope of a FOIA exemption.").

31.   Much like the conclusory Exemption 5 assertion, CIS's statement that the Report "contain[s] no reasonably segregable portion(s) of non-exempt information" provides no evidence that USCIS met its burden to prove that this statement is in fact true. 5 U.S.C. § 552(a)(4)(B); *see Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1052 (3rd Cir. 1995) (concluding that the FBI's "statements regarding segregability are wholly conclusory, providing no information that would enable [the requester] to evaluate the FBI's decisions to withhold"); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2001) (finding inadequate the government's conclusory explanation that documents contained no segregable material); *see Wightman v. Bureau of Alcohol, Tobacco & Firearms*, 755 F.2d 979, 983 (1st Cir. 1985) (holding that "the process of segregation" for 36 pages was not unreasonable).

32.    The Report at issue undoubtedly contains raw data and factual assertions that do not fall under any privilege that can be asserted under Exemption 5.  In addition, CIS has publicly disclosed past Annual Reports on its website as well as reports from its International Operations and Refugee Affairs divisions. (*See* Ex. 8 at 2, n.3.)  These reports likely contain content that overlaps with the withheld Report and evidence the fact that at least some of the withheld information is available to the public.  Pursuant to 5 U.S.C. 552(b), CIS must segregate any information that does not fall under any exemption and disclose it.  *See* Holder Memo ("Agencies should always be mindful that the FOIA requires them to take reasonable steps to segregate and release nonexempt information.  Even if some parts of a record must be withheld, other parts either may not be covered by a statutory exemption, or may be covered only in a technical sense unrelated to the actual impact of disclosure.").

33.    IRAP filed a timely administrative appeal of CIS's decision on November 22, 2011.  (Ex. 8.)

34.    CIS denied IRAP's appeal on January 9, 2012.  (Ex. 9.)

35.    IRAP now seeks judicial review of this decision in accordance with 5 U.S.C. § 552(a)(4)(B).

**CIS Also Wrongly Withheld Documents from the Second Set of Sample Documents**

36.    CIS disclosed a second set of sample documents by letter dated December 12, 2011 and received by IRAP on December 15, 2011.  (Ex. 10.)

37.    Of the 157 pages disclosed, CIS wrongfully redacted 137 pages and withheld an additional nine pages in full pursuant to FOIA exemptions 5 U.S.C. §§ 552(b)(5), (b)(6) ("Exemption 6"), (b)(7)(C) ("Exemption 7(C)"), (b)(7)(E) ("Exemption 7(E)"), and (b)(7)(F) ("Exemption 7(F)").  (*See* Ex. 10.)

38.    Exemption 6 provides that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6)

39.    Exemption 7 provides that FOIA does not apply to matters that constitute: "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. §§ 552(b)(7)(C), (E), (F).

40.    Beyond the conclusory assertion of exemptions listed on each page, CIS provided no explanation for its redactions and complete withholdings of documents. In many cases, IRAP has no way to discern what exemption applied to what redaction or, indeed, why the redaction was applied at all.

41.    IRAP filed a timely administrative appeal of CIS's December 2011 decision on February 7, 2012. (Ex. 11.)

42.    In its appeal, IRAP requested CIS to reconsider its decision to withhold several categories of documents, including the following: (1) names of government officials; (2) problems with caseload or caseload issues; (3) trends observed; (4) policy guidance; and (5) primary and secondary findings. (*See* Ex. 11 at 1-2.) In addition, IRAP requested the release of several additional pages of documents for which CIS provided no explanation. (*See id.* at 2.)

43.     Similar to CIS's redactions in its first set of sample documents referenced above, USCIS has withheld information with no explanation other than stating that one or several privileges under the asserted exemptions "may" apply. (*See* Ex. 11 at 6-7.)  As with the first set of sample documents, it remains unclear which, if any, privilege/s actually do apply.  Again, such vague language cripples IRAP's ability to know whether CIS has properly applied the law or even gave adequate consideration to IRAP's request.

44.     Along these same lines, CIS often asserts multiple exemptions on each page, but fails to do any of the following:  specify which redaction applies to what withheld information, sufficiently describe the withheld material when it is not obvious from its context, or explain why each exemption is justifiably applied.  (*See, e.g.* Exhibit 11 at 6 (repeatedly stating that "[t]he types of documents and/or information that we have withheld ***could*** consist of . . . ." without ever specifying what they ***do*** consist of); *see id* at 32 (asserting three exemptions without specifying the redactions they apply to or why exemptions are being asserted); *id.* at 57 (withholding "notes" but not specifying the subject of the "note").  Without such specific information, IRAP cannot know whether exemptions were properly asserted or even exemption to challenge.

45.     Furthermore, in several instances CIS applied exemptions inconsistently, suggesting that exemptions were asserted in a haphazard manner without concern for achieving FOIA's goal of government transparency.  For example, on page 23 of Exhibit 11, the entirety of the "Trends Observed" are redacted, while the same exact category of information remains unredacted on page 33.  In another example, the details of the "Winchester Training Program" are entirely redacted on page 100 of Exhibit 11, while the discussion of the "Nairobi Training Program" is fully disclosed.  In a third example, the descriptions of cases that were denied are

disclosed on pages 163 and 164 of Exhibit 11 and the names of the applicants and other personal identifying information are properly redacted. In contrast, on pages 154-158, the entire description of cases that were denied is redacted. Such inconsistent withholdings ignore FOIA's command to disclose all "reasonably segregable" non-exempt portions of the information requested. 5 U.S.C. § 552(b); *see* Holder Memo (instructing agencies to carefully segregate and release nonexempt information).

46.     CIS denied IRAP's appeal by letter dated April 9, 2012. (Ex. 12.) CIS sent a second denial letter dated April 23, 2012, received by IRAP on April 30, 2012. (Ex. 20.)

47.     IRAP now seeks judicial review of this decision in accordance with 5 U.S.C. § 552(a)(4)(B).

## CIS Continues to Withhold Documents Despite IRAP's Affirmative Efforts to Limit the Scope of Its Request

48.     On January 4, 2012, IRAP *cut in half the total number* of requested documents by agreeing to limit the time period of requested documents from January 1, 2001 through present day to January 1, 2005 to present day. (Ex. 13.)

49.     On January 12, 2012, IRAP further refined its FOIA request based on the December 15, 2011 samples. IRAP requested all officer feedback reports for officers involved with "Circuit Rides." Consistent with IRAP's good faith effort to reduce the burden on CIS, IRAP limited the time period of this request to January 1, 2005 through the present day. (Ex. 14.)

50.     This request, like all previous ones, was consolidated by CIS under FOIA Request Control Number COW2011000600.

51.     By letter dated December 8, 2011, received by IRAP on February 24, 2012, IRAP received the first set of non-sample documents responsive to its request. (Ex. 15.)

52.     Of the 1,558 pages CIS disclosed, over sixty percent of these documents were unresponsive to IRAP's original and later refined requests. This disclosure also included a number of documents that had previously been disclosed in sets of "sample" documents. To lessen CIS's burden, IRAP asked that whole categories of these unresponsive documents not be included in future disclosures.

53.     The February 24, 2012 disclosures also included numerous Microsoft Excel tables that were broken up and largely incomprehensible. IRAP notified CIS of the unresponsive and unreadable documents by letter on March 14, 2012 and by telephone.

54.     CIS responded by letter dated March 15, received by IRAP on March 19, and enclosed a CD with Microsoft Excel spreadsheets in a readable format. (Ex. 16.) But, CIS locked all the spreadsheets, which served as a cumbersome barrier to any data analysis by IRAP. IRAP has since requested that CIS unlock all future spreadsheets, but CIS has thus far not agreed to do so.

55.     Despite IRAP's every effort to ease CIS's burden to respond in a timely manner to its request, CIS has still not disclosed an untold number of documents, nor has CIS provided even a tentative release date for when the remaining documents will be disclosed.

**More Than Nine Months After Receiving the FOIA Request, CIS Has Failed to Disclose a Number of Responsive Records**

56.     Through the date of this pleading, CIS has failed to disclose all documents responsive to IRAP's July 15, 2011 FOIA request, notwithstanding FOIA's requirement of an

agency response within twenty working days, see 5 U.S.C. § 552(a)(6)(A)(i), or, if properly

invoked in this instance, the 10-day extension provided by 5 U.S.C. § 552(a)(6)(B).

57.     CIS's failure to adequately respond to IRAP's FOIA request within the statutorily

prescribed deadline constitutes constructive exhaustion of IRAP's administrative remedies with

respect to its FOIA request. *See* 5 U.S.C. § 552(a)(6)(C)(i).

58.     Because CIS has wrongfully withheld the requested records, IRAP must now seek

court intervention to force CIS's compliance with its statutory obligations.

## Despite Repeated Requests, CIS Has Failed to Provide A Tentative Release Date for the Requested Documents

59.     FOIA, 5 U.S.C. § 552(a)(7)(B)(ii), requires CIS to provide a tentative release date

for the requested information.

60.     By letters dated October 31, November 22, and December 20, 2011, IRAP

requested the tentative release date for the requested records.   (Exs. 17, 18, 19.)

61.     A tentative release date was also requested by email to DHS FOIA liaison Eliot

Viker on December 5, 2011.  (*See* Ex. 19 at 10-11.)  Numerous additional requests for a tentative

release date were also made telephonically to Mr. Viker.

62.     Despite these repeated requests, through the date of this pleading, CIS has failed

to provide a tentative release date for the documents in violation of FOIA.

**CLAIMS FOR RELIEF**

**COUNT I**

**FOIA Violation: CIS Wrongfully Withheld Records Under FOIA Exemptions 5, 6, 7(C), 7(E), and 7(F)**

63.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if repeated and reincorporated herein.

64.     DHS has violated IRAP's right to DHS records under 5 U.S.C. § 552.

65.     IRAP has exhausted the applicable administrative remedies with respect to its FOIA request.

66.     IRAP is entitled to injunctive relief compelling the complete, unredacted release of all responsive agency records.

67.     IRAP is also entitled to a declaration that DHS violated the law in failing to respond within the statutory deadline and for improperly asserting that certain records are exempt from disclosure.

**COUNT II**

**FOIA Violation:  CIS's Failure to Comply With Statutory Deadlines**

68.     The preceding paragraphs are hereby incorporated by reference as if set forth fully herein.

69.     DHS has violated IRAP's right to DHS records under 5 U.S.C. § 552.

70.     IRAP properly requested the records described above from Defendant DHS.

71.     The requested records are under the custody and/or control of Defendant DHS.

72.     DHS's response to IRAP's FOIA request violated the statutory deadlines imposed by FOIA, including the deadlines set forth in 5 U.S.C. § 552(a)(6)(A).

73.     IRAP has exhausted the applicable administrative remedies with respect to its FOIA request.

74.     IRAP is entitled to injunctive relief compelling the complete, unredacted release of all responsive agency records.

75.     IRAP is also entitled to a declaration that DHS violated the law in failing to respond within the statutory deadline and for improperly asserting that certain records are exempt from disclosure.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff prays that this Court:

A.     Declare that the defendant Department of Homeland Security has violated the Freedom of Information Act;

B.     Order defendant to produce unredacted versions of all responsive agency records within ten business days of the Court's Order in this matter;

C.     Award plaintiff its costs and reasonable attorney's fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E);

D.     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

E.       Grant such other relief as the Court may deem just and proper.

Dated: New York, New York          By: _____
          May 1, 2012                       Matthew M. D'Amore
                                            MDAmore@mofo.com
                                            MORRISON & FOERSTER LLP
                                            1290 Avenue of the Americas
                                            New York, New York 10104-0050
                                            Telephone: 212.468.8000

                                            L. Scott Oliver (*pro hac vice* pending)
                                            SOliver@mofo.com
                                            MORRISON & FOERSTER LLP
                                            755 Page Mill Road
                                            Palo Alto, California 94304-1018
                                            Telephone: 650.813.5600

                                            Jason A. Malinsky (*pro hac vice* pending)
                                            JMalinsky@mofo.com
                                            MORRISON & FOERSTER LLP
                                            425 Market Street
                                            San Francisco, California 94105-2482
                                            Telephone: 415.268.7000

                                            Attorneys for Plaintiff Iraqi Refugee Assistance
                                            Project