UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IRAQI REFUGEE ASSISTANCE PROJECT,

                Plaintiff,                        12-cv-3461 (PKC)

      -against-                              MEMORANDUM
                                                      AND ORDER

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        To determine refugee eligibility for resettlement in the United States, an agency of defendant Department of Homeland Security ("DHS") sends a small team of personnel overseas to interview and adjudicate each applicant.  On these trips, trained personnel spend several weeks near a concentrated refugee population and make individualized findings as to the applicants' background and credibility.  Their decisions must comply with the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq., and are informed by supplemental agency guidance.

        After these trips, a team leader submits a "trip report" summarizing his or her observations.  Trip reports discuss numerous topics: from hotel amenities and public transportation to suspected fraud trends and evidence of applicants' terrorism ties.  They may discuss individual applicants in detail or summarize observations about a large refugee population.  Trip reports are intended to give more senior staff information on application trends and identify gaps in the knowledge, resources and procedures for adjudicating applicants.  The reports sometimes request clarification of existing policy or specifically suggest policy changes.

This action is brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA").  After plaintiff Iraqi Refugee Assistance Project ("IRAP") brought this action seeking the public release of documents about the refugee adjudication process, the parties substantially narrowed the scope of their disputes.  IRAP maintains, however, that the DHS has unlawfully redacted sections of trip reports that describe the refugee-adjudication process, while the DHS asserts that the redactions fall within statutory exemptions to FOIA's mandatory disclosure.

Both parties move for summary judgment.  Pursuant to a process proposed by the parties and ordered by the Court, IRAP has designated ten trip reports for review by the Court in camera to determine whether redactions made by DHS fall within FOIA's exemptions.  The Court has reviewed the unredacted versions of the trip reports.

For the reasons that will be explained, the Court concludes that the DHS has met its burden of showing that the redacted material falls within FOIA's exemptions.  The DHS's motion is therefore granted in its entirety, and IRAP's motion is denied.

BACKGROUND.

A.  Circuit Trip Reports and the DHS's Adjudication of Refugees.

The United States Refugee Admissions Program ("USRAP") is a federal program that screens and admits refugees for resettlement.  (Pl. 56.1 ¶ 1.)[1]  The USRAP is administered by the Refugee Affairs Division ("RAD") of the Refugee, Asylum and International Operations Directorate of the United States Citizenship and Immigration Services ("USCIS").  (Strack Dec. ¶ 1.)  The USCIS is an agency of the DHS.  (Pl. 56.1 ¶ 1; Strack Dec. ¶ 1.)

---

[1] The DHS has not submitted a statement of undisputed facts pursuant to Local Civil Rule 56.1, asserting that such statements are not necessary because summary judgment in a FOIA case is to be adjudicated based on affidavits alone.  (Def. Mem. at 3 n.1.)  The DHS does not dispute the facts raised in IRAP's Rule 56.1 statement.  (Id.)

The RAD's "primary mission" is to adjudicate refugee applications and approve only applicants who satisfy the INA's statutory criteria for refugee designation. (Strack Dec. ¶ 8.) USCIS refugee officers are responsible for individual adjudications. (Strack Dec. ¶ 7.) All adjudicators "must undergo extensive training in refugee law as well as specific country conditions training" related to the conditions and population that they are visiting. (Strack Dec. ¶ 12.)

As part of the USRAP process, the USCIS sends teams of "circuit riders" to concentrated refugee populations, where they personally interview and adjudicate each resettlement applicant. (Pl. 56.1 ¶¶ 1-2.) These are known as "circuit trips" or "circuit rides," and they generally last six to seven weeks. (Strack Dec. ¶ 9.) Circuit trips usually have four to five refugee adjudicators and are supervised by a team leader. (Strack Dec. ¶ 13.)

After each trip, the team leader writes a "circuit ride trip report," or "trip report," summarizing on-the-ground observations. (Pl. 56.1 ¶ 3: Strack Dec. ¶ 14.) Trip reports range in length from a few pages to ten pages or more. (Strack Dec. ¶ 14.) They discuss issues specific to each circuit trip, including transportation and accommodations, security, communications, caseload patterns and fraud trends. (Strack Dec. ¶ 14.) The contents of trip reports may vary depending on refugee population, country and region. (Strack Dec. ¶ 15.)

According to Barbara L. Strack, chief of the RAD, trip reports are "an integral part of the de-briefing process" and are used to plan later trips in the same country or region. (Strack Dec. ¶ 15.) Senior RAD staff use trip reports to identify topics that require high-level attention, including fraud detection and national security. (Strack Dec. ¶ 16.) Strack states that applicant fraud trends "are particularly sensitive," and refugee adjudicators will commonly reject applicants based on suspected fraud or lack of credibility. (Strack Dec. ¶ 17.) Strack states that

the fraud discussions in trip reports are used to develop lines of questioning that identify credible applicants in future trips.  (Strack Dec. ¶ 17.)

  B.  <u>Procedural History.</u>

   Plaintiff IRAP is a non-profit organization that provides legal representation to individuals seeking refugee resettlement.  (Pl. 56.1 ¶ 4.)  In 2011, IRAP submitted FOIA requests to the DHS and the State Department for records related to the USRAP process, including circuit trip reports.  (Pl. 56.1 ¶ 5; Eggleston Dec. ¶ 6.)  In 2011 and 2012, the USCIS released 1,558 pages of documents to IRAP, many of them partially or "heavily" redacted.  (Pl. 56.1 ¶ 6; Eggleston Dec. ¶ 8.)

   It is undisputed that IRAP exhausted its administrative remedies before bringing this action, which seeks declaratory and injunctive relief directed to DHS's compliance with FOIA.  (Pl. 56.1 ¶ 7; Eggleston Dec. ¶¶ 9-10; Docket # 1.)  On March 5, 2013, while this action was pending, the USCIS agreed to additional review of documents responsive to IRAP's pending FOIA requests, including trip reports.  (Pl. 56.1 ¶ 9.)  On July 8, 2015, the DHS produced additional materials, which included descriptions reflecting the applicants' lack of sophistication in navigating the USRAP system.  (Pl. 56.1 ¶¶ 10-11.)  A July 29, 2015 production of trip reports included factual observations of USCIS personnel and their views on existing USRAP policies. (Pl. 56.1 ¶¶ 12-13.)

   In December 2015, the Court approved a stipulation that narrowed the parties' dispute to 563 pages of redacted documents and dismissed IRAP's claims as to all other materials.  (Pl. 56.1 ¶¶ 14-15; Docket # 43.)  It provided that this action would be stayed until April 22, 2016 (a date later extended to May 6, 2016) unless either party requested a lifting of the stay, in which case a then-existing briefing schedule would be reinstated.  (Docket # 43 ¶ 3;

Docket # 49.)  While the stay was in effect, defendant DHS was to undertake a good-faith review

as to whether its redactions were consistent with its claimed FOIA exemptions.  (Id. ¶ 4.)

On April 27, 2016, IRAP wrote to the Court requesting that the stay be lifted

because the parties could not reach an agreement as to 563 pages of redactions to trip reports.

(Pl. 56.1 ¶ 17; Eggleston Dec. ¶ 14.)  The Court vacated the stay and adopted a briefing schedule

on the current motion.  (Pl. 56.1 ¶ 18.)

C.  The DHS's Ex Parte Submissions.

Pursuant to a procedure agreed upon by the parties and ordered by the Court,

IRAP has designated ten partially redacted documents of its choosing for in camera, ex parte

review of whether the DHS has made redactions consistent with FOIA's requirements.

(Eggleston Dec. ¶ 20.)

The DHS has submitted the ten selected documents to the Court ex parte, as well

as a so-called Vaughn Index explaining the basis for the redactions.  (Eggleston Dec. ¶ 20.)  A

Vaughn Index takes its name from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  An agency

prepares a Vaughn Index to explain its reasons for claiming a FOIA exemption, and the index is

not required to conform to a particular format.  See id. at 827-28.  The Vaughn Index is

submitted as part of the Declaration of Jill A. Eggleston, who has the job title of Associate

Center Director in the Freedom of Information and Privacy Act Unit, National Records Center,

USCIS.  (Eggleston Dec. ¶ 1.)

In a footnote to its supporting memorandum, DHS suggests that the Court should

resolve the parties' motion based solely on the Vaughn Index, without in camera review of the

disputed materials.  (DHS Mem. at 12 n.3.)  It notes that courts generally favor deciding FOIA

disputes through agency affidavits and limit in camera review to matters that cannot be resolved

through affidavit.  See, e.g., Am. Civil Liberties Union v. Dep't of Def., 389 F. Supp. 2d 547,

567 (S.D.N.Y. 2005) ("Cases generally disfavor in camera inspections by district court judges as

the primary method for resolving FOIA disputes.") (Hellerstein, J.).

       The Court declines to follow the DHS's suggestion.  As will be discussed, the in

camera review of the disputed material has been essential to deciding this motion.  Although the

Vaughn Index provides accurate and good-faith descriptions of the redacted contents, it discusses

them in broad terms, as is warranted given the potentially sensitive nature of some underlying

subject matter.  Absent in camera review, the Court would be unable to make adequate findings

as to the DHS's claimed FOIA exemptions and whether the discussions contain segregable

factual content.

LEGAL STANDARD.

       A.  The DHS's FOIA Burden at Summary Judgment.

       Summary judgment "shall" be granted if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ.

P.  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency

has the burden of showing that its search was adequate and that any withheld documents fall

within an exemption to the FOIA."  Carney v. United States Department of Justice, 19 F.3d 807,

812 (2d Cir. 1994), citing 5 U.S.C. § 552(a)(4)(B); accord Bloomberg, L.P. v. Bd. of Governors

of the Fed. Reserve Sys., 601 F.3d 143, 147 (2d Cir. 2010) (all doubts are "resolved in favor of

disclosure," and the agency has the burden "to justify the withholding of any requested

documents.") (quotation marks omitted); Associated Press v. United States Dep't of Defense,

554 F.3d 274, 283 (2d Cir. 2009) (FOIA has a "'strong presumption in favor of disclosure,'" and

agencies have the burden "'to justify the withholding of any requested documents.'") (quoting United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The text of FOIA authorizes redaction, and directs that "[a]ny reasonably segregable portion of a record" must be provided "after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "'That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document.'" Associated Press, 554 F.3d at 283-84 (quoting Ray, 502 U.S. at 173). "Redaction, however, is 'expressly authorized by FOIA,' which indicates that Congress 'recognized that the policy of informing the public about the operation of its Government can be adequately served in some cases without unnecessarily compromising individual interests in privacy.'" Id. at 284 (quoting Ray, 502 U.S. at 173).

B. FOIA Exemptions 5 and 7(E).

FOIA "was enacted to facilitate public access to Government documents." Ray, 502 U.S. at 173. However, the text of FOIA creates express exemptions to disclosure. Associated Press, 554 F.3d at 283. The exemptions are to be narrowly construed. Id. "The agency's decision that the information is exempt from disclosure receives no deference; accordingly, the district court decides de novo whether the agency has sustained its burden." Bloomberg, L.P., 601 F.3d at 147. "An agency may carry its burden by submitting declarations 'giving reasonably detailed explanations why any withheld documents fall within an exemption,' and such declarations 'are accorded a presumption of good faith.'" Center for Constitutional Rights v. Central Intelligence Agency, 765 F.3d 161, 166 (2d Cir. 2014) (quoting Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009)). "[D]iscovery relating to the agency's search and

the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." <u>Carney</u>, 19 F.3d at 812.

All remaining disputes involve the DHS's reliance on Exemption 5 and Exemption 7(E) of FOIA.  5 U.S.C. §§ 552(b)(5), 552(b)(7)(E).  The DHS asserts that all of the redacted contents challenged by IRAP fall within Exemption 7(E), and that some contents separately fall within Exemption 5.

      1.  <u>Exemption 5.</u>

Exemption 5 creates a "deliberative process privilege" for intra-agency memoranda and letters "that would not be available by law to a party other than an agency in litigation with the agency . . . ." <u>Id.</u> § 552(b)(5).  "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001).

Any document falling within Exemption 5 must be both "predecisional" and "deliberative."  A document is predecisional when it is "'prepared in order to assist an agency decisionmaker in arriving at his decision.'" <u>Hopkins v. U.S. Dep't of Hous. & Urban Dev.</u>, 929 F.2d 81, 84 (2d Cir. 1991) (quoting <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975)).  A document is deliberative when it is "'actually . . . related to the process by which policies are formulated.'"  <u>Id.</u> (quoting <u>Jordan v. United States Dep't of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)).  "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the

quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Klamath, 532 U.S. at 8-9 (quotation marks and internal citation omitted).

Exemption 5 "protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (quoting Ethyl Corp. v. Environmental Protection Agency, 25 F.3d 1241, 1248 (4th Cir. 1994)).  In the context of agency adjudication, this exemption may apply to "an agent's analysis of a particular . . . case" and internally "recommended dispositions of cases." Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. Nat'l Labor Relations Bd., 845 F.2d 1177, 1180 (2d Cir. 1988).

An agency does not need to identify a resulting decision, but the document's recommendations must go toward policy formulation and not part of "a routine and ongoing process of agency self-evaluation." Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 80 (2d Cir. 2002) (quotation marks omitted).  "Purely factual material not reflecting the agency's deliberative process is not protected." Local 3, 845 F.2d at 1180.

2. Exemption 7(E).

Exemption 7(E) applies to "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . ." 5 U.S.C. § 552(b)(7)(E).  Whether the contents go toward law enforcement's "techniques and procedures" is considered separately from whether they "disclose guidelines."

As used in Exemption 7(E), the term "guidelines" includes guidance about resource allocation and subjects worthy of investigation, whereas "techniques and procedures" include the methods used in the investigation.  See generally Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Security, 626 F.3d 678, 682 (2d Cir. 2010).  To quote to an example used by the Second Circuit, "if a law enforcement agency concerned with tax evasion directs its staff to bring charges only against those who evade more than $100,000 in taxes, that direction constitutes a 'guideline.'"  Id.  But "if the same agency informs tax investigators that cash-based businesses are more likely to commit tax evasion than other businesses, and therefore should be audited with particular care, focusing on such targets constitutes a 'technique or procedure' for investigating tax evasion."  Id.

Discussion of law enforcement techniques and procedures is categorically exempt from FOIA disclosure, "without need for 'demonstration of harm.'"  Id. at 681 (quotation marks omitted).  However, information that constitutes guidelines may be withheld under Exemption 7(E) only if disclosure of that information risks circumventing the law.  Id.  ("the qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'").

Documents that broadly pertain to an agency's administrative enforcement of the INA can fall within Exemption 7(E).  See McErlean v. U.S. Dep't of Justice, 1999 WL 791680, at *8 (S.D.N.Y. Sept. 30, 1999) ("It is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes' within the meaning of Exemption 7.") (Jones, J.).  One court has described the USCIS as a "mixed-function" agency "whose functions include some law enforcement and some non-law enforcement duties," thus

necessitating "some skepticism" as to whether agency documents fall within Exemption 7.  Am. Civil Liberties Union of S. California v. United States Citizenship & Immigration Servs., 133 F. Supp. 3d 234, 242 (D.D.C. 2015).

As discussed below, nearly all of the disputed redactions discuss the techniques, procedures and guidelines for detecting applicant fraud.  For example, certain redacted discussions reveal patterns of fraud, including accounts from a specific refugee population concerning the conduct of family members and other details so similar that refugee officers concluded that they were likely attempts at immigration fraud.  Awareness by applicants that adjudicators have identified certain patterns may cause applicants to tailor their statements in order to avoid detection.  Some of the redactions cover methods and guidance for identifying applicants who are suspected of having ties to terrorist organizations.  These redactions fall squarely within the USCIS's law enforcement concerns.

DISCUSSION.

A.  The Disputed Redactions to Exhibits 1 through 10 Are Exempt from FOIA Disclosure.

Because the disputed materials were submitted ex parte and in camera, IRAP has the task of advocating for the disclosure of contents unknown to it.  IRAP's supporting memorandum cites to publicly disclosed trip reports that describe unsophisticated applicants and possible flaws in personnel training and trip administration, and relies on them as indicative of the disputed contents.  (IRAP Mem. at 4-5, 15-19.)  IRAP appropriately notes the important public interest of bringing daylight to agency processes and accurately states that generally known investigative techniques and mere factual descriptions are not exempt from FOIA's strong presumption of disclosure.  (Id. at 4-5, 15-19.)

However, having reviewed the redacted discussions, this Court comfortably concludes that the redactions are narrowly applied to contents that include the internal formulation of policy, techniques and procedures of law enforcement, and/or law enforcement guidelines.  If disclosed, many of the redacted discussions, and specifically the discussions of law enforcement guidelines, would facilitate applicant fraud and undermine USCIS fraud-detection practices.

Exhibit 1.

Exhibit 1 is a trip report that summarizes a circuit trip to Turkey that took place in August and September 2009.  (Eggleston Dec. ¶ 25.)  The redactions fall under the headings "Caseload Issues" and "Trends Observed."  (Eggleston Dec. ¶¶ 24-25.)

As explained by the Vaughn Index, the redacted text concerning "Caseload Issues" discusses the applicant processing conducted by staff of the United Nations High Commissioner for Refugees ("UNHCR"), and compares the testimony that applicants gave to their testimony before USCIS officers.  (Eggleston Dec. ¶ 25.)  It states that the redacted information has been kept confidential in order to inform USCIS personnel how "to more accurately assess and process future refugee applicants."  (Eggleston Dec. ¶ 25.)

The Vaughn Index states that the "Trends Observed" as to applicants from Iraq, Iran and Somalia contains redacted discussion of applicants' testimony during adjudicative hearings.  (Eggleston Dec. ¶ 26.)  In a supplemental release, the DHS provided limited, un-redacted information in order "to demonstrate the general nature of the topics addressed."  (Eggleston Dec. ¶ 26; D'Amore Dec. Ex. 1B.)  For example, as to Iran, the released text states, "There were numerous . . . probing the applicant's credibility . . .  Several cases involved . . . ."  (D'Amore Dec. Ex. 1B.)  The Vaughn Index explains that the redacted "Trends Observed"

discussion "details the typical kinds of claims heard from these refugee populations, areas of concern officers should be aware of, as well as subject areas that Refugee Officers should probe with these applicants during interviews." (Eggleston Dec. ¶ 26.)

As to Exemption 5, the Court finds that the redacted text includes recommendations and suggestions for future lines of questioning, which were tailored to elicit truthful answers from narrowly specified segments of refugee populations. (Eggleston Dec. ¶¶ 28, 30.) It also contains recommendations as to future interactions with non-USCIS entities, such as the UNHCR. (Eggleston Dec. ¶ 29.) These are subjective recommendations for future policies and prescriptive observations about areas of concern. The Court comfortably concludes that the redacted text of Exhibit 1 falls within Exemption 5.

The redacted text of Exhibit 1 also falls within Exemption 7(E). The Vaughn Index accurately summarizes the contents as describing "certain aspects of common refugee applications from the refugee population in Turkey," including information intended to assist USCIS personnel in accurately adjudicating applications for refugee status. (Eggleston Dec. ¶ 32.) The redacted contents also include information "regarding UNHCR pre-screening of applicants" and "information about military history and case history" that, if disclosed, could help applicants "tailor their applications and testimony . . . to conceal or alter their background information . . . ." (Eggleston Dec. ¶ 33.) Under Exemption 7(E), these enforcement guidelines include information that, if publicly disclosed, could help applicants evade investigator techniques and thus circumvent the law. Allard K. Lowenstein Int'l, 626 F.3d at 681. The Court therefore concludes that the redactions to Exhibit 1 fall within Exemption 7(E).

As to Exhibit 1, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 2.

The disputed redactions to Exhibit 2 fall under the heading "Problems or Issues with Caseload" and "Trends Observed."  Exhibit 2 discusses a trip to Abu Dhabi, United Arab Emirates in June and July 2009.  (Eggleston Dec. ¶ 35 n.10.)  As summarized by the Vaughn Index, the redacted portion of the "Caseload" section includes "discussion about material support, military service and Ba'ath Party membership" of certain applicants.  (Eggleston Dec. ¶ 35.)  Under the "Trends Observed" heading, the team leader summarizes "certain trends observed during interviews with refugee applicants . . . ."  (Eggleston Dec. ¶ 35.)  This includes "common fraud trends" and information about "[a]pplicants who pose a national security and public safety risk to the United States . . . ."  (Eggleston Dec. ¶ 37.)

The Court has reviewed the redacted text in camera and finds that it satisfies the statutory criteria of Exemption 5 and Exemption 7(E).  As to Exemption 5, the redacted text expressly advises areas of possible follow-up research and future investigation.  It contains recommendations and suggestions to decision makers.  See generally Grand Cent. P'ship, 166 F.3d at 482.  Exemption 7(E) separately applies because, as noted in the Vaughn Index, the redacted text discusses issues concerning applicants' potential public safety risk and connections to the Ba'ath Party, as well as potential fraud trends concerning refugee applicants from certain specified populations.  (Eggleston Dec. ¶ 37.)  Under Exemption 7(E), the enforcement guidelines include information that, if publicly disclosed, could help applicants evade investigator techniques and thus circumvent the law.  Allard K. Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 2, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

<u>Exhibit 3.</u>

The disputed redactions to Exhibit 3 fall under the headings "Trends Observed" and "Policy Guidance." (Eggleston Dec. ¶¶ 39-41 & Ex. 7.)  The document is a trip report of a circuit trip to Damascus, Syria from July to September 2010.  (Eggleston Dec. ¶ 39 n.11.)  As summarized by the <u>Vaughn</u> Index, the redacted portion of the "Trends Observed" section discusses a widespread "camp story" that "was commonly asserted by the refugee applicants and deemed not credible by the Refugee Officers." (Eggleston Dec. ¶ 40.)  The redacted text also summarizes observations shared by UNHCR staff concerning possible ways to verify a common applicant claim, and "details on possible fraudulent claims often heard by refugee applicants from this region . . . ." (Eggleston Dec. ¶¶ 40, 43.)  It also "outlined the number and type of any applicant waivers and referrals based on terrorism-related inadmissibility grounds . . . ." (Eggleston Dec. ¶ 40.)

The Court has reviewed the redacted text <u>in</u> <u>camera</u> and finds that it satisfies the statutory criteria of Exemption 5 and Exemption 7(E).  As to Exemption 5, the redacted text under the "Policy Guidance" heading expressly advises a clarification of policy that relates to interviewing the specific refugee populations.  It contains policy recommendations and suggestions to decision makers.  <u>See generally</u> <u>Grand Cent. P'ship</u>, 166 F.3d at 482.

Exemption 7(E) separately applies to the redacted discussions because they discuss techniques, procedures and guidelines that detail potentially fraudulent claims made by applicants.  Under Exemption 7(E), the enforcement guidelines include information that, if disclosed, could help applicants circumvent the law.  <u>Allard K. Lowenstein Int'l</u>, 626 F.3d at 681.

- 15 -

As to Exhibit 3, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 4.

The disputed redactions to Exhibit 4 fall under the headings "Trends Observed" and "Suspected Fraud Trends." (Eggleston Dec. ¶ 45.) Nearly all text under these headings has been redacted. The document is a trip report of a trip to Beirut, Lebanon in April and May 2011. (Eggleston Dec. ¶ 45 n.14.) As summarized by the <u>Vaughn</u> Index, the redacted text "contain[s] information pertinent to specific refugee claims" encountered by interviewers, details on "[s]uspected incidents of immigration fraud," and "specific cases and statements that were deemed suspicious and warranted highlighting . . . ." (Eggleston Dec. ¶ 46.)

In arguing that these redactions are exempt from FOIA disclosure, DHS relies only on Exemption 7(E). The Court has reviewed the redacted text <u>in camera</u> and finds that it pertains directly to the techniques and procedures of law enforcement. It also includes guidelines information concerning topics that require increased scrutiny. As explained by the <u>Vaughn</u> Index, the redacted information discusses application patterns that emerged during the trip, suspicions of fraudulent applications and types of answers deemed suspicious. (Eggleston Dec. ¶ 46.) Under Exemption 7(E), the guidelines discussions include information that, if disclosed, could help applicants evade investigator techniques and thus circumvent the law. <u>Allard K. Lowenstein Int'l</u>, 626 F.3d at 681.

As to Exhibit 4, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 5.

The disputed redactions to Exhibit 5 fall under the headings "Caseload Issues" and "Trends Observed." (Eggleston Dec. ¶ 48.) The document is a trip report that summarizes a circuit ride to Beirut, Lebanon and Abu Dhabi, United Arab Emirates in February and March 2009. (Eggleston Dec. ¶ 48 n.15.) As described in the Vaughn Index, the redacted text raises "several issues concerning program eligibility for certain refugee applicants," which were highlighted for the review of more senior USCIS officials. (Eggleston Dec. ¶ 49.) The redacted content included recommendations for future action. (Eggleston Dec. ¶ 49.) It also discussed problems specific to certain male applicants, which required heightened scrutiny during adjudication. (Eggleston Dec. ¶ 50.)

The Court has reviewed the redacted text in camera, and finds that it meets the statutory criteria of Exemption 5 and Exemption 7(E). As to Exemption 5, the redacted text identifies narrowly specific conduct observed on the circuit trip and the need for further guidance from more senior USCIS officials. It identifies a separate issue concerning the uniformity of a line of questioning as it related to a specific population, and suggested further investigation. These discussions contain recommendations and suggestions to decision makers, and therefore satisfy the statutory requirements of Exemption 5. See generally Grand Cent. P'ship, 166 F.3d at 482.

Exemption 7(E) separately applies to the redacted text. The redactions include discussion of what the Vaughn Index accurately summarizes as "problems unique to some of the male applicants," "certain types of fraudulent claims" that personnel encountered and issues "involving applicants with possible ties to a well-known terrorist group." (Eggleston Dec. ¶ 50.) These discussions provide guidance for assessing applicants and identifying possible fraud

trends.  Under Exemption 7(E), the enforcement guidelines include information that, if disclosed,
could help applicants evade investigator techniques and thus circumvent the law.  Allard K.
Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 5, IRAP's motion for summary judgment is denied, and the DHS's
motion is granted.

Exhibit 6.

The disputed redactions to Exhibit 6 fall under the headings "Trends Observed,"
"Other Cases of Interest" and "Other trends and issues observed during the Circuit Ride."
(Eggleston Dec. ¶¶ 54-55.)  The document is a trip report that summarizes a trip to Istanbul from
January to March 2011.  (Eggleston Dec. ¶ 53 n.16.)  As described in the Vaughn Index, the
redacted text includes "a specific recommendation to USCIS" about a narrow subset of
applicants.  (Eggleston Dec. ¶ 54.)  It also included details about specific cases that were
"illustrative of possible fraud trends" among applicants in Istanbul.  (Eggleston Dec. ¶ 55.)

The Court has reviewed the redacted text in camera, and finds that it meets the
statutory criteria of Exemption 5 and Exemption 7(E).  The DHS invokes Exemption 5 as to
those redactions under the heading "Other trends and issues observed during the Circuit Ride."
(Eggleston Dec. ¶ 54.)  The redacted text involves a specific recommendation to superiors
concerning the management of claims among a specific category of applicants.  Portions of this
discussion have been un-redacted and released, but the identity of the applicant category remains
withheld.  (See D'Amore Dec. Ex. 6B.)  Subsequent redacted discussion of this same population,
under the heading "Follow-Up Training, Policy, and Research Needs," included policy
recommendations for future use as to this population.  These discussions contain

recommendations and suggestions to decision makers and satisfy the statutory requirements of Exemption 5.  See generally Grand Cent. P'ship, 166 F.3d at 482.

In addition, Exemption 7(E) applies to these redacted discussions and to the additional redactions made by the DHS.  The redactions include description and analysis of what the Vaughn Index accurately summarizes as "detailed specifics about individual refugee cases that were deemed illustrative of possible fraud trends" likely to be encountered during interviews with refugees from this population.  (Eggleston Dec. ¶ 55.)  The DHS accurately asserts that these discussions detail techniques and procedures for future adjudications, including the identification of possible fraudulent claims.  (Eggleston Dec. ¶ 55.)  Under Exemption 7(E), the guidelines include information that, if disclosed, could help applicants evade investigator techniques and thus circumvent the law.  Allard K. Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 6, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 7.

The disputed redactions to Exhibit 7 fall under several headings.  (Eggleston Dec. ¶¶ 59-60.)  The document is a trip report that summarizes a circuit ride to Kenya in May and June 2011.  (Eggleston Dec. ¶ 57 n.17.)  As described in the Vaughn Index, the redacted text includes recommendations to more senior USCIS personnel concerning training needs, changes to the interview process and further research into terrorist groups.  (Eggleston Dec. ¶ 59.)  It also "contain[s] details on interviews with refugee applicants encountered in Kenya that were deemed suspicious in nature and illustrative of suspected immigration fraud."  (Eggleston Dec. ¶ 60.)

The Court has reviewed the redacted text in camera, and finds that it meets the statutory criteria of Exemption 5 and Exemption 7(E).  As to Exemption 5, the redacted text

includes commentary that is expressly phrased to recommend policy changes as to training issues. The redactions are unambiguous recommendations and suggestions to decision makers, and comfortably satisfy the statutory requirements of Exemption 5. See generally Grand Cent. P'ship, 166 F.3d at 482.

Exemption 7(E) separately applies to the redacted text. Under the "Caseload Issues" heading, the redacted text describes applicant interviews that raised suspicions of fraudulent accounts, including certain applicant common themes suspected of being a product of coordination. The discussions are detailed and specific, and give guidance for scrutinizing potentially fraudulent applications. Under Exemption 7(E), the enforcement guidelines include information that, if disclosed, could help applicants evade investigator techniques and thus circumvent the law. Allard K. Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 7, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 8.

The disputed redactions to Exhibit 8 fall under the headings "Communications" and "Caseload Issues."[2] (Eggleston Dec. ¶¶ 64-65.) The document is a trip report that summarizes a circuit ride to Nepal from November 2007 to January 2008. (Eggleston Dec. ¶ 62 n.18.) As described in the Vaughn Index, the redacted text discusses "case processing issues that arose with many of the refugee applicants who were uninformed about the resettlement process." (Eggleston Dec. ¶ 64.) The redacted text also includes "a noteworthy case involving a refugee

---

[2] After this action commenced, the DHS released portions of the discussion under the heading "Problems or issues with Case Load/Trends Observed," which explained, among other things, difficulties in transliterating applicant names to the Roman alphabet, conforming applicant birthdates to the Gregorian calendar and the omission of applicants' maiden names. (See D'Amore Dec. Ex. 8-B.) The Court points out this factual discussion as an example of released trip-report content that candidly describes the problems encountered with adjudication that, at the same time, does not reveal sensitive law-enforcement guidelines or techniques and procedures.

applicant with possible terrorism ties" and "how the applicant's testimony resulted in the case being placed on hold."  (Eggleston Dec. ¶ 65.)

The Court has reviewed the redacted text in camera, and finds that it meets the statutory criteria of Exemption 5 and Exemption 7(E).  Exemption 5 is only for a policy recommendation as to applicants who were uninformed about the refugee resettlement process. As a recommendation and suggestion to decision makers, it satisfies the statutory requirements of Exemption 5.  See generally Grand Cent. P'ship, 166 F.3d at 482.

Exemption 7(E) applies to the remainder of the redacted text.  One redaction includes a brief discussion of an applicant who may have had ties to terrorism.  Additional passages discuss in detail personal observations concerning specific local issues that were unique to refugee applicants in Nepal.  The Vaughn Index accurately states that the information is intended for use by future teams working in Nepal and give guidance on enforcing the INA.  If disclosed, the information could held applicants evade investigation and thus circumvent the law, and potentially facilitate other impediments to the adjudication process.  These redactions satisfy the statutory requirements of Exemption 7(E).  Allard K. Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 8, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 9.

The disputed redactions to Exhibit 9 fall under the heading "Caseload Issues." The document is a trip report that summarizes a circuit ride to Amman, Jordan in November and December 2007.  (Eggleston Dec. ¶ 67 n.19.)  As described in the Vaughn Index, the redacted text "included a recommendation to USCIS's refugee policy division about missing information concerning certain refugee applicants."  (Eggleston Dec. ¶ 69.)  It also "details specific applicant

testimony and issues concerning the testimony that will guide and inform future refugee adjudications in Jordan." (Eggleston Dec. ¶ 70.)

The Court has reviewed the redacted text in camera, and finds that it meets the statutory criteria of Exemption 5 and Exemption 7(E). The DHS relies on Exemption 5 to the extent that the redacted text recommends further guidance and clarification on a specific factual question related to the applicant population. To the extent that the redacted text makes this recommendation and suggestion to decision makers, it satisfies the statutory requirements of Exemption 5. See generally Grand Cent. P'ship, 166 F.3d at 482.

The redactions to Exhibit 9 otherwise satisfy the criteria of Exemption 7(E). The Vaughn Index accurately describes redacted discussion under the "Caseload Issues" heading as summarizing a specific category of applicants, their common traits and how personnel evaluated the credibility of their statements. (Eggleston Dec. ¶ 70.) This discussion presents a somewhat closer question than other disputed redactions because it principally contains factual descriptions as to the applicants' backgrounds and does not expressly raise the issue of fraud. At the same time, it describes the adjudication of a narrow and specific category of applicants and differences in their backgrounds that were relevant to adjudication decisions. Reviewing de novo the DHS's reliance on Exemption 7(E), and mindful that the DHS has the burden of proving the exemption's applicability, the Court concludes that the discussion satisfies the exemption's criteria. It ultimately reflects on the techniques and procedures for adjudicating the claims of a narrow population of applicants, and how employees adjudicating their applications decided the credibility of their statements. To the extent that this discussion gives guidance to personnel adjudicating similar cases in the future, this guidelines information could help applicants evade investigator techniques and thus circumvent the law. Allard K. Lowenstein Int'l, 626 F.3d at

681.  The Court therefore concludes that this discussion satisfies the statutory criteria of Exemption 7(E).

It is unclear whether IRAP challenges the redactions under the sub-heading "CLASS Hits."  (Eggleston Dec. ¶ 71.)  "CLASS" stands for Consular Lookout and Support System, and "refers to queries of a law enforcement database that is maintained by the Department of State and is utilized when vetting refugee applicants."  (Eggleston Dec. ¶ 71.)  To the extent that IRAP challenges the redaction of the entry discussing CLASS, such information would disclose law enforcement techniques and procedures, and thus meets the criteria of Exemption 7(E).  See generally Strunk v. U.S. Dep't of State, 905 F. Supp. 2d 142, 148-49 (D.D.C. 2012) (discussing application of Exemption 7(E) to law-enforcement databases) (collecting cases).

As to Exhibit 9, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

Exhibit 10.

IRAP challenges the redaction of two paragraphs under the "Trends Observed" heading in Exhibit 10.  The document is a trip report that summarizes a circuit trip to Accra, Ghana in January and February 2007.  (Eggleston Dec. ¶ 73 n.20.)  As described in the Vaughn Index, the redacted text is "a recommendation to USCIS headquarters about problems with UNHCR's pre-screening of applicants and case preparation for referral to USCIS for refugee adjudications."  (Eggleston Dec. ¶ 75.)  It also requests "assistance from the USCIS fraud division regarding one refugee applicant's case."  (Eggleston Dec. ¶ 75.)  The Vaughn Index also states that "the information details specific refugee case-related issues reported by the Team Leader that will guide and inform future refugee adjudications in Ghana."  (Eggleston Dec. ¶ 76.)

The Court has reviewed the redacted text in camera, and finds that it meets the statutory criteria of Exemption 5 and Exemption 7(E).  As to Exemption 5, the redacted text includes an express policy recommendation concerning the UNHCR.  As a recommendation and suggestion to decision makers, it satisfies the statutory requirements of Exemption 5.  See generally Grand Cent. P'ship, 166 F.3d at 482.

Exemption 7(E) separately applies to the redacted text.  The Vaughn Index accurately summarized the redacted text as involving a request for assistance as to a specific incident of fraud, and, separately, guidance as to future refugee adjudications.  These discussions describe the techniques and procedures for adjudicating applications, and also qualify guidelines for adjudication that, if disclosed, could help applicants evade investigator techniques and thus circumvent the law.  Allard K. Lowenstein Int'l, 626 F.3d at 681.

As to Exhibit 10, IRAP's motion for summary judgment is denied, and the DHS's motion is granted.

B.  DHS Has Disclosed Reasonably Segregable Portions of the Record.

When a government body produces a document in redacted form, "[n]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Am. Civil Liberties Union v. F.B.I., 59 F. Supp. 3d 584, 588-89 (S.D.N.Y. 2014) (Pauley, J.) (quoting Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007)).  "'Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.'"  Id. at 589 (quoting Sussman, 494 F.3d at 1116).

"'Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.'"  El Badrawi v. Dep't of Homeland Sec., 583 F. Supp.

2d 285, 320 (D. Conn. 2008) (Hall, J.) (quoting Sussman, 494 F.3d at 1117).  "However, '[i]f the requester successfully rebuts this presumption, the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld.'"  Id. (quoting Sussman, 583 F. Supp. 2d at 1117).  Any "segregable factual portions" that do not fall within an exemption must be released.  Grand Central P'ship, 166 F.3d at 482.

        IRAP argues that "there is no indication that" the redacted factual information in the trip reports is so intertwined with exempt information that it cannot be released.  (IRAP Mem. at 21.)  Having reviewed the reports' redacted contents ex parte, the Court finds that the redacted factual discussions are an integral basis of the exemptions, and cannot be segregated for release.  The discussions do not consist of discrete factual observations followed by a policy proposal, a description of law enforcement method or technique, or an enforcement guideline.  Rather, the discussions highlight observations about unusual or even troubling facts that require further guidance and analysis from more senior officials.  Many of them describe patterns or evidence of suspected applicant fraud, including suspected trends.  Because these factual discussions are an integral part to the exemptions' application, they are not capable of segregable disclosure.

        The Court separately notes that as to the trip reports reviewed in this motion, their non-exempt contents have already been released to the public in unredacted form.  Based on the parties' submissions and the Court's in camera review, it appears that the DHS has made a careful and good-faith effort to release all discussions that do not fall within a FOIA statutory exemption.

        The Court therefore finds that the DHS has disclosed reasonably segregable portions of the record.

CONCLUSION.

For the reasons explained, the defendant's motion for summary judgment is GRANTED and the plaintiff's motion is DENIED.  The Clerk is directed to terminate the motions (Docket # 52, 62) and enter judgment for the defendant.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 27, 2017

- 26 -